Joseph S. LoParo v. Commissioner.
Joseph S. LoParo v. Commissioner
Docket No. 17398.
United States Tax Court
1949 Tax Ct. Memo LEXIS 84; 8 T.C.M. (CCH) 795; T.C.M. (RIA) 49214; September 1, 1949
*84 Petitioner's income for the calendar years 1944 and 1945 determined by the net worth method, and the respondent's imposition of a 50 per cent addition to the tax for fraud in each taxable year sustained. Elmer J. Patton, Esq., 811 Hanna Bldg., Cleveland 15, Ohio, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner has determined the following deficiencies in income tax for the calendar years 1944 and 1945 and has imposed in each year a 50 per cent addition to the tax for fraud: Addition
Year
Deficiency
to Tax
Total
1944
$10,263.84
$5,131.92
$15,395.76
1945
5,303.21
2,651.61
7,954.82
$23,350.58
The petitioner in this proceeding alleges that the respondent erred in determining the amount of the deficiencies and in imposing in respect thereto additions to tax for fraud in each of the taxable years involved. Findings of Fact The petitioner, Joseph S. LoParo, is an individual who now resides at 1303 W. 110th Street, Cleveland, Ohio. His income tax returns for the calendar years 1944 and 1945 were filed with the collector of internal *85 revenue for the 18th district of Ohio at Cleveland, Ohio. During the year 1944 the petitioner owned and operated the following business enterprises: Name
Business
LoParo Distributing Co.
Orange drink distrib-
utor for Bireley's Inc.
Lubeck Casino
Bar and restaurant
Mickey (Merry) Mouse
Bar and restaurant
Cafe
Barberton Tap Room
Bar
During 1945 petitioner sold the LoParo Distributing Company and the Barberton Tap Room. During the years in question, petitioner employed managers and other employees in each of his business establishments and engaged an accountant to maintain the business books and records and prepare his individual income tax returns. Petitioner's books and records were kept and his returns were filed on a cash receipts and disbursements basis. No inventories of goods sold were maintained although the tax returns for 1944 and 1945 showed the same opening and closing inventory figure of $200. In 1944 petitioner purchased over $5,000 worth of liquor which was not recorded on his books and which was not deducted by him in his tax return for that year. Petitioner included in his income for 1944 the amount of $1,040 from coin machines *86 and additional income of $500 not reflected in his business records. In 1945 petitioner included in his income the amount of $2,600, representing an estimate of funds withdrawn by him from the business. This figure likewise was unsupported by his books and records. No improper deductions were found by the respondent in petitioner's tax returns for either 1944 or 1945. The petitioner's books and records did not accurately reflect his correct taxable income for the years in question. The respondent therefore recomputed the petitioner's income for each year by the so-called "net worth" method. In recomputing petitioner's income for 1944 and 1945 under the net worth method, respondent determined petitioner's assets and liabilities as of December 31, 1943, 1944, and 1945, in the following amounts: Assets
1943
1944
1945
Cash on Hand
$10,000.00
$ 5,000.00
$ 2,000.00
Cash in Banks
Cleveland Trust Co.
Sav. #14998
1,505.12
2,115.22
2,134.03
Sav. #25834
0
1,000.00
2,111.27
Sav. #24756
80.00
0
0
Com'l. - Lubeck Cassino - Joe LoParo
206.00
137.59
5,426.78
Morris Plan (Bank of Ohio)
Sav. #18087
7.71
100.66
1,309.22
Com'l. - Jack McHugh & Joe LoParo
87.53
1,245.48
1,073.68
Com'l. - Josephine LoParo
0
0
890.70
Central National
Sav. #P46101
0
0
13,841.50
Sav. #69388
0
0
475.75
Com'l. - Josephine LoParo
0
0
92.98
Com'l. - LoParo Dist. Co. - Joe LoParo
2,362.45
4,657.57
0
War Bonds - Series E
2,812.50
2,850.00
2,550.00
American Dist. Stk. - 10 shares
0
1,100.00
1,100.00
Inventories
2,200.00
9,700.00
14,200.00
Automobiles
1941 Chrysler
1,268.50
1,268.50
1,268.50
1937 Nash
0
0
100.00
Furniture - Fixtures - Equipment
J. LoParo Dist. Co. (J. LoParo)
7,461.50
7,461.50
0
Lubeck Cassino (Rose Zingale)
2,460.00
2,460.00
2,460.00
Mickey Mouse (Josephine LoParo)
3,965.00
3,965.00
3,965.00
Barberton Tap Room (Josephine LoParo)
0
9,664.00
0
Real Estate
10304 Lake Ave. (Rose Zingale)
15,000.00
15,000.00
15,000.00
1722-6 Payne Ave (Joe & Santa Manzeo) 1/2 int.
0
0
2,875.00
1704-8 E. 18 St. (Frank Kilbane)
0
0
15,750.00
Total Assets
$49,416.31
$67,725.52
$88,624.41
Liabilities
Mortgages
Pension Fund-Evan Church (Rose Zingale)
$ 9,900.00
$ 6,533.23
$ 2,234.52
Cleve. Trust (Joe & Santa Manzeo) 1/2
0
0
1,070.61
Roumanian Sav. & Loan (Frank Kilbane)
0
0
6,773.62
Loans and Chattel Mortgages
Morris Plan - Bank of Ohio
2,768.00
0
0
Depreciation Reserves: LoParo Dist. Co.
6,294.08
6,992.46
0
Lubeck Cassino
1,620.00
2,161.00
2,210.00
Mickey Mouse
198.25
594.75
991.25
Barberton Tap Room
0
83.20
0
Total Liabilities & Reserves
$20,780.33
$16,364.64
$13,280.00
Net Worth
$28,635.98
$51,360.88
$75,344.41
Net Worth - Previous Year
$28,635.98
$51,360.88
Increase - Net Worth
$22,724.90
$23,983.53
*87 Petitioner is in complete agreement with the respondent's determination of liabilities and concurs in his determination of assets for each year with the exception of the amounts representing cash on hand as of December 31, 1943, 1944, and 1945, and the ownership of funds on deposit in 1944 and 1945 in savings account #25834 which was held in the joint names of the petitioner and his mother. The funds in savings account #25834 were solely owned by the petitioner's mother and did not at any time represent the property of the petitioner. In June, 1943, petitioner's father, Carmelo LoParo, was seriously ill and summoned to his home his entire family, including two sons who were then serving in the Armed Forces. In the presence of his assembled relatives he turned over to the petitioner, his eldest son, the sum of approximately $33,000 in cash. Petitioner had cash on hand in the amounts of $27,000 as of December 31, 1943; $17,000 as of December 31, 1944, and $6,000 as of December 31, 1945. Respondent determined that the petitioner's income tax returns for 1944 and 1945 understated his true income in the amount of $22,110.50 and $11,548.37, respectively. The respondent's determination *88 was as follows: 1944
1945
Net Worth (Increase)
$22,724.90
$23,983.53
Personal, Family, Living Expenses
3,600.00
3,600.00
Income Taxes Paid
800.00
600.00
Indicated Net Income
$27,124.90
$28,183.53
Less: Non-taxable Income
50% Long Term Capital Gain
6,524.21
Taxable Net Income
$27,124.90
$21,659.32
Standard Deduction
500.00
500.00
Adjusted Gross Income - Corrected
$27,624.90
$22,159.32
Adjusted Gross Income - Reported
5,514.40
10,610.95
Understatement of Income
$22,110.50
$11,548.37
Petitioner admitted in his petition and reply understatements of income in his tax returns for 1944 and 1945 in the amounts of $10,245.36 [1] and $2,765.80, [1] respectively; and deficiencies in tax of $3,855.89 for 1944 and $1,263.38 for 1945. A part of the deficiency due for each of the calendar years 1944 and 1945 is due to fraud with intent to evade tax. Opinion ARUNDELL, Judge: The first issue herein concerns the amount of petitioner's taxable income for the calendar years 1944 *89 and 1945. In determining the deficiencies for each year, the respondent rejected the petitioner's books and recomputed his income under the so-called net worth system. Although the respondent concedes that the petitioner's tax returns were in accord with his books, except as to several items of income which were estimates of the petitioner, neither party herein contends that the books completely or accurately disclosed his correct income for either taxable year. The petitioner, in contesting the respondent's determination, has not introduced his business records in evidence, nor has he attempted to prove their adequacy. In fact, petitioner concedes understatements of income of $10,245.36 for 1944 and $2,765.80 for 1945, which he bases on the respondent's recomputation of net worth for each year with the exception of two items, namely, the amount of cash on hand as of December 31, 1943, 1944, and 1945, and the ownership of funds deposited in a joint savings account held in the names of the petitioner and his mother during 1944 and 1945. The parties are in agreement concerning the value of other assets and the amount of petitioner's liabilities in each year. Therefore, we are called *90 upon to make a determination only in connection with the two elements of net worth upon which the parties have been unable to agree. Petitioner contends that, exclusive of funds on deposit in various bank accounts, he had cash on hand amounting to $32,100.31 as of December 31, 1943, $17,232.15 as of December 31, 1944, and $6,160.75 as of December 31, 1945, rather than $10,000, $5,000 and $2,000 as determined by the respondent as cash on hand on the same dates. The respondent's refusal to accept the petitioner's explanation that he received $33,000 in cash from his father in June of 1943 accounts in a large measure for the difference between the parties in respect to the figures representing cash on hand. However, we have found that petitioner's father, who was seriously ill during June, 1943, and who died shortly thereafter, called his entire family together at his home, including two sons in the Armed Forces, one of whom was serving overseas, and, in the presence of his assembled relatives, turned over to the petitioner the sum of approximately $33,000. The petitioner, two of his brothers, and a sister all testified in great detail as to the events of the meeting and particularly *91 the father's giving of $33,000 to the petitioner. It is impossible to determine from the record with any degree of accuracy the total amount of cash available to the petitioner during 1943. However, there is evidence that the petitioner made substantial expenditures during 1943 for medical expenses, taxes, personal living expense, contributions, the purchase and improvement of properties, and payments on existing indebtedness which in our judgment certainly reduced his cash on hand at the end of 1943 to a figure less than $32,000. Having given full consideration to the petitioner's assets and expenditures during 1943 in so far as they are disclosed in the record before us, it is our judgment and we have so found as a fact that the petitioner had cash on hand as of December 31, 1943 of $27,000. From a similar analysis of the evidence of petitioner's financial affairs in the years 1944 and 1945, we have reached the conclusion that he had cash on hand as of December 31, 1944, and December 31, 1945, of $17,000 and $6,000, respectively. The second element of the petitioner's net worth which is in dispute is the ownership of the savings account which was held in the joint names of petitioner *92 and his mother during 1944 and 1945 at the Cleveland Trust Company. All of the evidence presented is to the effect that the funds deposited in this account were the separate property of the petitioner's mother and that the account was opened by the mother in their joint names only to insure petitioner's receiving the money therein in the event of her death. Therefore, it is our opinion that the respondent erred in treating the amounts deposited in that account, namely, $1,000 in 1944 and $2,111.27 in 1945, as assets of the petitioner in those years. The remaining issue concerns the correctness of the respondent's imposition of a 50 per cent addition to the tax for fraud in each of the taxable years in question. It has been stated that in assessing income taxes the Government relies primarily upon a full and honest disclosure by the taxpayer of all the relevant facts in his annual return. . As a deterrent to tax evasion Congress enacted section 293(b) which provides for a 50 per cent addition to the tax if any part of any deficiency is due to fraud with intent to evade tax. However, to sustain the imposition of the so-called fraud *93 penalty, the respondent must show by clear and convincing evidence that the taxpayer filed false and fraudulent returns with intent to evade tax. As it is seldom possible to establish fraud by direct evidence of the taxpayer's intention, we may consider the character of the transactions involved and the taxpayer's conduct as evidence of his intent. . In the instant proceeding we have found that the books and records maintained by the petitioner neither completely nor accurately disclosed his true taxable income for the years 1944 and 1945. Apparently for that reason the petitioner made no attempt to prove the adequacy of his books. On the contrary, the petitioner in challenging the proposed deficiency recomputed his income for each year under the net worth method. As a result of his own recomputation, an understatement of income for the year 1944 was disclosed in the amount of $10,200.94, which understatement is in itself approximately 200 per cent of the income disclosed in his 1944 return. For the year 1945, petitioner's own net worth statement discloses an understatement of $2,765.70, or 26 per cent of his reported income for that year. *94 The petitioner offers no explanation for the omission of this income from his books or his income tax returns. We have held in the past that, in the absence of any reasonable excuse, a taxpayer's failure to report substantial amounts of income unquestionably received constitutes sufficient evidence of a fraudulent intent to sustain the imposition of so-called fraud penalties. ; ; ; ; . The record demonstrates that the petitioner was an intelligent and experienced business man who maintained close personal contact with his several businesses. He had filed Federal income tax returns in prior years and we may assume that he was thoroughly acquainted with his duty to make correct returns of income. The amounts of income disclosed by the net worth statements submitted in evidence by petitioner considered alone show omissions from his returns for 1944 and 1945 of amounts much too large to be attributed to mere oversight or to the petitioner's poor bookkeeping practices. Our findings *95 show omissions from gross income in larger amounts with a consequent greater deficiency for each of the years than petitioner concedes even though the income as determined by us is somewhat less than respondent has determined. In the absence of any reasonable explanation from the petitioner, these facts in our judgment constitute clear and convincing evidence of fraud. It is our opinion and we have so found as a fact that a part of the deficiency for each year is due to fraud with intent to evade tax. The respondent's imposition of the 50 per cent addition to tax for fraud in each year is sustained, adjusted in amount to reflect the deficiencies as they will appear as a result of the conclusions reached herein. Decision will be entered under Rule 50. Footnotes
1. In a net worth statement offered in evidence by petitioner the understatements of income for 1944 and 1945 are shown as $10,200.94 and $2,765.70, respectively.↩